## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MARY A. KERBACHER,                    :

       Plaintiff,                    :          CIVIL ACTION NO. 3:12-2431
                                             (JUDGE MANNION)

                v.                    :

CAROLYN W. COLVIN,[1]                    :
Acting Commissioner of
Social Security                    :

       Defendant.                    :


### MEMORANDUM

The record in this action has been reviewed pursuant to 42 U.S.C. §§405(g) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act, ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f.


## I.   PROCEDURAL HISTORY.

On July 23, 2009, the plaintiff filed an application for a period of DIB and

---

[1] On February 14, 2013, Carolyn Colvin became acting Commission of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil procedure, she has been substituted as the defendant.

SSI alleging her disability began on April 10, 2008. (Tr. 37). Her claim was initially denied on December 22, 2009 and she filed a written request for a hearing on January 12, 2010. (Id.). A hearing was held in front of an Administrative Law Judge (ALJ) on November 16, 2010. (Id.). After taking testimony from the plaintiff, questioning a vocational expert, and reviewing the medical records, the ALJ found the plaintiff was not disabled within meaning of the Social Security Act at anytime between April 10, 2008 to the date of the decision. (Tr. 38). 20 C.F.R. 404.1520(g). The Appeals Council denied the plaintiff's request for review, making the ALJ's decision final. See 42 U.S.C. §405(g).

At issue before this court is whether substantial evidence supports the Commissioner's decision that the plaintiff was not disabled because she was capable of performing a limited range of light work prior to the date when the ALJ issued her decision. The plaintiff claims three errors: (1) the ALJ afforded inadequate weight to the opinion of the treating physician thereby making his hypothetical question improper; (2) the ALJ's credibility determination of the plaintiff was unsupported by substantial evidence; and (3) the reliance on the

vocational expert was flawed due to the exclusion of some of the treating physician's exclusions and limitations. (Doc. No. 10). The plaintiff filed a brief in support of her appeal on March 25, 2013, (Id.), and the defendant filed a brief in opposition on April 29, 2013. (Doc. No. 11). The plaintiff filed a reply brief on May 13, 2013. (Doc. No. 12). The case is now ripe for decision.

## II.    STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999), *Johnson*, 529 F.3d at 200. It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).

## III.    DISABILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. See 20 C.F.R. §404.1520. See also *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a plaintiff is

4

disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. §404.1520. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §404.1520.

Here, the ALJ proceeded through each step of the sequential evaluation process and concluded that the plaintiff was not disabled within the meaning of the Act. (Tr. 39-48). At step one, the ALJ found that the plaintiff has not engaged in substantial gainful work activity at any time since her alleged onset date of April 10, 2008. (Tr. 39). At step two, the ALJ concluded that the plaintiff's impairments (Post Traumatic Stress Disorder (PTSD), Anxiety, Polysubstance Abuse, Major Depressive Disorder, and Personality Disorder) were severe within the meaning of the Regulations. (Tr. 40). At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Subpart P, Appendix 1, Regulations No. 4. (20 C.F.R. §404.1520(d),

5

§404.1520(d) and §416.920(d)). (Tr. 40-42).

The ALJ found at that the plaintiff has the residual functional capacity ("RFC"), to perform a range of unskilled and semiskilled work. (Tr. 42-47). At step four, the ALJ found that through the date of the decision, the plaintiff was unable to perform any past relevant work. (Tr. 47). At step five, the ALJ concluded that considering the plaintiff's residual functional capacity, age, education, and work experience, there were significant jobs in the national economy that the plaintiff could perform. (Tr. 48-49).

The ALJ therefore concluded that the plaintiff had not been under a disability, as defined in the Act, at any time from April 10, 2008 through the date of decision. 20 C.F.R. §§ 404.1520(g) and 216.920(g). (Tr. 39).

## IV.    BACKGROUND

Plaintiff was born in 1958 and was 49 years old on the alleged onset date of April 10, 2008, (Tr. 37, 167), and 51 on the date of the decision. (Tr. 167). The plaintiff attended college for two years, (Tr. 69), and worked on-and-off as a license practice nurse from 1982 through March 2008. (Tr. 197). Her PTSD stems mainly from two incidents in 2003 when the plaintiff was physically assaulted twice in front of her own home. (Tr. 245).

She has taken some college courses and her grades ranged from B to C. (Tr. 72). She graduated from PAC[2] in May 2009 and started Penn College in August 2010. (Tr. 69). At Penn College, she took two courses, one in psychology and one in art. The art class met twice a week for two hours and the psychology class met three times a week for fifty minutes at a time. (Tr. 70). She got along with both of her professors, but she had issues with her advisor because the advisor was "aggressive." (Tr. 75). She also attended Al-Anon, church, and therapy. (Tr. 79). She actively sought out treatment for her PTSD through various veteran's offices, although she herself is not a veteran. (Tr. 75).

The plaintiff saw Dr. Barry Hart, Ph.D., in May 2006. He diagnosed her with PTSD, but noted that she was doing well for someone with her mental disease. (Tr. 247). She was oriented, coherent, directed, and focused on improving her mental state. She did get emotional when discussing her prior attacks, but she had no delusional thoughts or any incentive to harm herself. (Id.). Otherwise, the doctor noted he was satisfied she was "doing very well." (Id.).

The plaintiff has a lengthy history of drug abuse, and was admitted to

_____

[2]Based on the record, it is unclear what type of school "PAC" is.

the Horsham Clinic on February 6, 2008. (Tr. 251). She was a patient at that same clinic in August 2004. (Tr. 254). Despite admitting to using up to eight bags of heroin per day, she was nourished, had normal speech, had normal thought processes without delusions or hallucinations, and was alert and oriented. (Tr. 252). The plaintiff did have poor judgment and was positive for suicidal thoughts. (Id.). Upon her discharge on February 12, 2008, notes indicate she was not suicidal, homicidal, was sleeping better, had energy, and experienced no nightmares or flashbacks. However, she was anxious about speaking with her boyfriend about their relationship. (Id.).

In October 2008, the Office of Vocational Rehabilitation (OVR) referred the plaintiff to Dr. Sheree Contres, Psy.D., for a psychological evaluation as part of creating a vocational plan. (Tr. 257). The doctor noted the patient was combative, had trouble understand directions, was anxious, and fluctuated between compliance and non-compliance with directions. She also had difficulty staying focused and understanding what was being asked of her. (Tr. 258). She noted, aside from her emotional and understanding abilities, the plaintiff presented no ticks, issues with motor skills, or issues with speech. (Id.). Tests were performed that showed the plaintiff was within the low-average range for intellectual functioning, the average range for reading,

8

numerical operations, and spelling, and scored in the severely impaired range for problem solving skills. (Tr. 259-60). Her memory and motor skills were generally below average as well and showing severe anxiety. (Tr. 261). Dr. Contres recommended continued AA meetings, counseling, psychiatric consulting, and drug monitoring due to her anxiety. (Tr. 262). She also concluded she could not work in a setting that required problem solving, where speed is a factor, and where new information is conveyed visually. (Id.). She was diagnosed with major depressive disorder, PTSD, polysubstance abuse, and given a GAF score of 41.[3] (Tr. 263).

The OVR also referred the plaintiff to Dr. Ramana Surya, D.O., for a psychiatric evaluation on March 29, 2009. (Tr. 365). The plaintiff noted no depression and improved sleep, appetite, and concentration. (Tr. 365). She noted the plaintiff was appreciative of the doctor, was mildly anxious, had no thought disorders, no suicidal or homicidal ideations, and her insight/judgment was only mildly impaired. (Tr. 281). She recommended continuing with AA, counseling, psychiatric therapy, and getting input from OVR. Moreover, she

_____

[3]A G.A.F. score between 41-50 denotes "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders DSM-IV-R at 34 (4th ed. 2000).

diagnosed the plaintiff with PTSD, Anxiety NOS, polysubstance abuse, and opiate dependance. (Tr. 282).

Dr. Surya also filled out a form assessing the plaintiff's mental capacity on March 26, 2009. (Tr. 278). Although this form backdates their first appointment of March 29, 2009, it is unclear why there is a discrepancy in the records. In terms of understanding and memory, the plaintiff showed moderate limitations in ability to remember location, work-like procedures, and remembering short, simple instructions. The plaintiff also had marked limitations in remembering detailed instructions. In terms of sustained concentration and persistence, the plaintiff has moderate limitations with: (1) ability to carry out simple instructions; (2) ability to perform scheduled activities, maintain regular instructions, and be punctual; (3) ability to sustain orderly routine without special supervision; (4) ability to complete a normal workday; (5) ability to complete a normal workweek; (6) ability to work at a constant pace with breaks. The doctor also concluded there would be marked limitations with carrying out detailed instructions, maintaining attention over extended periods of time, and working in coordination with others. (Tr. 276-77). The plaintiff would only need one day off a month as well due to her mental limitations. (Tr. 277).

Dr. Surya further concluded the plaintiff had slight limitations with the ability to interact with the public, ask simple questions or assistance, and maintain socially appropriate behavior. She also has a slight/moderate limitation with accepting instructions and a moderate limitation with ability to interact with coworkers. (Tr. 277). She had between slight/no limitations with responding to change in the workplace, being aware of hazards, traveling to unfamiliar places, and setting realistic goals and attaining them. (Tr. 278). The plaintiff returned in November 2009, December 2009, and February 2010 to see Dr. Surya. (Tr. 362-65). The notes from February 2010 show the plaintiff was having sleeping problems, was going to school to be retrained, and she was having some issues with her relationships. (Id.).

On December 7, 2009, consultative examiner Dr. Anthony J. Fischetto, Ed.D., examined the plaintiff. (Tr. 285). He noted she was anxious, reported problems sleeping, and experienced panic attacks from time to time. (Tr. 288). He noted her memory was limited, she had poor impulse control, and general poor judgment. (Id.). He also concluded that she would have no problems managing her funds or maintaining a normal daily life (driving, cleaning, cooking). (Tr. 290). He further noted that she had socialization issues coupled with limited concentration, persistence, and pace. (Id.). He

diagnosed major depressive disorder, PTSD, panic disorder, and personality disorders. (Id.). He reviewed how her mental disorder affected her ability to understand and carry out instructions, make judgments, interact appropriately with others, and respond to work pressure and changes. All were either slight or moderate limitations on her abilities. (Tr. 292).

The plaintiff also consulted with Dr. John W. Kelsey, Ph.D., of the Bureau of Disability Determination on February 10, 2011. (Tr. 414). The plaintiff completed her personal history without issued, (Tr. 414), but was agitated, hostile, and anxious. (Tr. 418). The mental exam showed the plaintiff had a fair cognitive ability, her conversational memory was normal, and she was oriented to time, place, and location. (Tr. 420). He concluded she had no restrictions with understanding simple instructions, carrying out those instructions, and understanding and remembering detailed instructions. He further found slight limitations with carrying out detailed instructions and making judgment on simple work decision. In support, the doctor specifically noted she was attending school full-time. (Tr. 424). Further, the doctor opined the plaintiff had moderate limitations with responding to work pressure and responding to changes in work routine. Lastly, he found she had marked limitations with interacting appropriately with the public, coworkers, and

supervisors. (Id.).

On December 21, 2009, the plaintiff was evaluated by state physician Dr. Elizabeth Hoffman, Ph.D. (Tr. 294). Many of her limitations mirror those shown in Dr. Kelsey's, Dr. Surya's, and Dr. Fischetto's reports. Dr. Hoffman concluded the plaintiff could perform simple, routine work in a stable environment requiring simple decisions and instruction. (Tr. 296). She would not require special instruction, but may have difficulties interacting with others and the public generally. (Id.).

During the hearing in front of the ALJ, a vocational expert was called. The ALJ asked for an opinion including her age, education, and work experience. The hypothetical question also included limitations requiring "simple, routine tasks in a low stress work environment" with only occasional decision-making and changes in work settings. (Tr. 82). He also noted the work could not include a "production rate or pace work." (Id.). With those restrictions, the vocational expert opined the plaintiff could work as an assembler of small parts, a cashier, or garment inspector. (Tr. 83).

## V.    DISCUSSION

A.  The ALJ properly evaluated the opinions of the plaintiff's treating

13

physician and her limitations based on the objective medical evidence
of record

The plaintiff alleges the ALJ's hypothetical question to the vocational
expert was incomplete and unsupported by the evidence because he did not
give appropriate weight to Dr. Suyra's limitations. (Doc. No. 10). Specifically,
the ALJ gave no weight to the opinions that included "marked limitations
related to maintaining attention and concentration for extended period when
under stress, working in proximity to others, and getting along with co-workers
because these limitations [were] not support by the evidence of record." (Tr.
45-6).

"While the ALJ is, of course, not bound to accept physicians'
conclusions, he may not reject them unless he first weighs them against other
relevant evidence and explains why certain evidence has been accepted and
why other evidence has been rejected." _Kent v. Schweiker_, 701 F.2d 110, 115
n.5 (3d Cir. 1983). Therefore, the court will evaluate whether the ALJ erred by
not giving substantial weight to the treating physician's opinions and properly
evaluated the plaintiff's RFC. (Tr. 27-28). _See Corly v. Barnhart_, 102 Fed.
App'x 752 (3d Cir. 2004); _see also Adorno v. Shalala_, 40 F.3d 43, 47-48 (3d
Cir. 1999) (holding that a statement by a treating physician deeming a plaintiff

"disabled" or "unable to work" is not dispositive. An ALJ must review all the medical findings and other evidence and weigh it against the opinion of the treating physician).

The Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," then it is to be given controlling weight. 20 C.F.R. §416.927(d)(2). When the opinion of a treating physician is not given controlling weight, the length of the treatment relationship and the frequency of examination must be considered. The Regulations state:

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a non-treating source.

20 C.F.R. §416.927(d)(2)(I).

Additionally, the nature and extent of the treatment relationship is considered. The Regulations state:

> Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and

15

at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. §416.927(d)(2)(ii).

The Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of *Morales v. Apfel,* *225 F.3d 310 (3d Cir. 2000)*. The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer* [v. *Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987)*); see also *Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir.1994)*; *Jones, 954 F.2d at 128*; *Allen v. Bowen, 881 F.2d 37, 40-41 (3d Cir.1989)*; *Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988)*; *Brewster, 786 F.2d at 585*. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)*). The ALJ must consider the medical findings that support a treating physician's opinion that the

claimant is disabled. See *Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent*, 710 F.2d at 115.

*Id.* at 317-318.

Dr. Contres, found the plaintiff was within the low-average range for intellectual functioning, the average range for reading, numerical operations, and spelling, and scored in the severely impaired range for problem solving skills. (Tr. 259-60). She concluded she could not work in a setting that requires problem solving, where speed is a factor, and where new information is conveyed visually. (Tr.262). Dr. Kelsey's conclusions were in line with these findings. He found the plaintiff had no restrictions with understanding simple instructions, carrying out those instructions, and understanding and remembering detailed instructions and only slight limitations with carrying out detailed instructions and making judgment on simple work decision. (Tr. 424). He also found that she would have marked limitations with personal interaction. (Id.). Dr. Hoffman further concluded the plaintiff could perform simple, routine work in a stable environment requiring simple decisions and instruction, but with limited personal interaction. (Tr. 296). Dr. Fischetto also

found only slight or moderate limitations with her ability to understand and carry out instructions, make judgments, interact appropriately with others, and respond to work pressure and changes.(Tr. 292).

Although Dr. Surya found that the plaintiff had marked limitations with personal interactions in a work environment, (Tr. 276-77), this conclusion was essentially contradicted by every other medical professional consulted on the case. The ALJ concluded that Dr. Surya did not base her conclusions on objective information. The plaintiff argues that Dr. Surya relied upon the tests conducted by Dr. Contres in October 2008. (Doc. No. 10). However, in her own notes, Dr. Surya notes these tests were conducted "prior to her being fully on methadone." (Tr. 280). Moreover, Dr. Contres's own notes and conclusions do not support Dr. Surya's limitations, noting only that the plaintiff should not work in a problem-solving or pace-based job. (Tr.262).

Moreover, the plaintiff's own testimony notes that she has been attending college, interacting well with her professors, going to church, attending AA meetings, and actively getting counseling. (Tr. 70, 75, 79). All of these actions require interactions with the public, figures of authority, require concentration, and in varying environment. This testimony demonstrates the plaintiff has some general limitations with personal interactions, but nothing that would

prohibit her from interacting in a similar work situation. Moreover, the vocational expert recommended two jobs, assembler of small products and garment inspector. (Tr. 83). Referring to the Dictionary of Occupational Titles, both of these occupations require relatively limited interacting with the public or excessive interaction with other workers.

In sum, the limitations noted by the ALJ in his questions to the vocational expert were well-supported and thoroughly documented in the evidence of record through the opinions of Drs. Contres, Hoffman, and Fischetto, along with the plaintiff's own testimony. He was justified in giving no weight to Dr. Surya's marked limitations that were not supported by the record or other opinions. As such, there was no error.

## B. The ALJ properly evaluated the credibility of the plaintiff

The plaintiff next claims that the ALJ improperly discredited the plaintiff's testimony about the "intensity, persistence[,] and limiting effects of" her symptoms. (Doc. No. 10; Tr. 46). The plaintiff argues the ALJ improperly discredited her testimony about stress she has encountered while attending school. (Tr. 70-74).

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with

19

the duty of observing a witness's demeanor and credibility.' *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir.1997); see also *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." *Frazier v. Apfel*, 2000 WL 288246 (E.D. Pa. March 7, 2000)."The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Com. of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999). An ALJ may find testimony to be not credible, but he must "give great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work when this testimony is supported by competent medical evidence." *Id.*

The plaintiff's contention that the ALJ improperly ignored what amounts to a few words regarding her stress as related to school is unfounded and unsupported by the record and the plaintiff's own testimony. As previously discussed, the plaintiff was attending college, church, counseling, interacting well with professors, and getting fair grades. (Tr. 70, 72, 75, 79). The ALJ also specifically pointed to Dr. Kelsey's evaluation regarding her work limitations, (Tr. 46), noting that his evaluation of marked public interaction restrictions do

not square with the plaintiff attending school. (Tr. 46, 424). Taken together, the ALJ properly evaluated the plaintiff's testimony in light of the objective medical testimony. Although pointing to a possible single incident of class-related stress, it was not error for the ALJ to give her testimony about her symptoms little weight in light of the entire record.

C. The ALJ's hypothetical question to the vocational expert was not made in error

The plaintiff next claims that the defendant failed to show that the plaintiff can perform other work as defined under 20 C.F.R. §416.920(f). *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002). "We do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant . . . [Rather, t]he hypotheticals posed must accurately portray the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments as contained in the record." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). This argument rests on the same grounds the court has already covered, namely that the ALJ improperly weighed Dr. Surya's opinion and asked an improper hypothetical of the vocational expert. As such, no further discussion is necessary.

## VI.   CONCLUSION

For the reasons stated above, the plaintiff's appeal from the decision of the Commissioner of Social Security, (Doc. No. 1), is **DENIED**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: December 31, 2013**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-2431-01.hhs.wpd